**BETTMAN v NORTHERN INS Co et**

Ohio Appeals, 2nd Dist, Franklin Co

No 2736. Decided Mar 2, 1938

Druggan & Gingher, Columbus, J. Paul McNamara, Columbus, Robert Sykes, New York City, Attorneys for Appellee.

Francis C. Canny, U. S. Attorney, Dayton, O., R. J. O'Donnell, Asst. U. S. Attorney, Columbus, Henry Munroe, Department of Justice, Attorneys for Appellants.

## OPINION

By GEIGER, J.

This cause involves a number of questions which must necessarily lead to a lengthy discussion. Before determining the ultimate question, preliminary matters must be disposed of.

On September 26, 1936, the Court of Common Pleas fixed the amount of certain fees to be paid to several attorneys whose interest will later appear in more detail. The court in the entry recited. that the cause came on to be heard on the applications for an allowance of fees for services rendered for the benefit of the Northern Insurance Company of Moscow, et al., and that said applications were submitted upon the statement of counsel, affidavits, the evidence and the record. It is recited that the court finds that valuable legal services have been rendered by the attorneys for the benefit of the trust prior to the filing of the intervening petition of the United States; that said services have been valuable in preserving the trust now approximating $123,000.00; that many important questions of law and practice have arisen in this and other litigation, to which other litigation counsel have given assistance; that the services began in October, 1931, and have been continuous since and have required numerous extended trips involving the expense of $960.56; that the attorneys have received no payment; and that the services are of the reasonable value of $20,000.00, which sum is allowed. It is ordered that the Superintendent of Insurance convert into cash securities deposited with him to yield enough to satisfy the order of the court and pay the same over to the Clerk of the Court, and the Clerk is ordered to pay over to Charles S. Druggan, one of said attorneys, said sum so allowed, the amount to be apportioned among themselves. To this entry exceptions are noted without a statement by whom noted.

Notice of appeal was given within time by the United States of America. Said appeal is upon questions of law and of fact.

An assignment of errors was filed in this court by the United States of America, stating that manifest error has intervened to the prejudice of the appellant and that the court erred in the following respects:

(1) Said decision and judgment is not sustained by any evidence;
(2) By sufficient evidence;
(3) Is contrary to the evidence, and
(4) Is against the manifest weight of the evidence.
(5) Said decision is contrary to law.
(6) Other errors manifest upon the face of the record.

The appellant filed no appeal bond in the court below.

On April 20, 1937, counsel for appellees moved this court to dismiss the appeal of the United States of America. The basis of the motion was that the appellant had not filed an appeal bond as prescribed by the statute. Lengthy briefs on this motion were filed in this court and extensive oral arguments indulged in, which it is not necessary here to discuss. The ultimate result, however, was that on July 10, 1937, this Court held that the United States of America is not in the excepted class enumerated in §12223-12, GC as not being required to give bond and that by reason of its failure to give bond on an appeal on questions of law and fact, the case can not be heard in this Court de novo as a chancery action, but the court declined to dismiss the case and ordered that the same shall stand for hearing on appeal on questions of law. In harmony with this de-

cision an entry was made in this court substantially as follows:

This day this cause came on to be heard on the motion of the Bank Manhattan Trust Company of New York, assignee, et a.., appellees, to dismiss the appeal of the United States of America, appellant, and the Court having considered the argument of counsel and the briefs, finds that the motion should be overruled. It is therefore ordered, that the motion to dismiss the appeal be overruled.

It appearing that appellant did not file an appeal bond in accordance with §12223-6 GC, it is further ordered, that this case shall not be tried as an appeal on questions of law and fact in this court and shall be held as an appeal on questions of law only.

Appellant is granted thirty days from and after the date of the filing of this entry for the preparation and settlement of a Bill of Exceptions.

Exceptions are allowed parties.

Whether this Court can retain a cause for hearing as an appeal on question of law, which was originally appealed on question of law and fact, but no bond filed, is still debatable. See Parker v Ingle, 24 Abs, 518-522; Graham v Green, 7 OO 477, 23 Abs. 330; and other cases on same question.

In compliance with this entry there was filed in this Court under date of August 6, 1937, what purports to be a bill of exceptions, but which is largely statements of counsel. Certain exhibits later to be noted are attached.

The bill was filed with the clerk on August 6th, but was not settled within the thirty day period granted by this Court in its entry of July 28th, but was finally signed by the trial judge and filed in this Court on September 17th, fifty-one days after the entry in this Court.

Our present view, and we so hold, is that the Bill of Exceptions, although filed fifty-one days after the entry in this Court, is in time. §11564, GC, Traction Co v Ruthman, 85 Oh St 62; Pace v Volk, 85 Oh St 413; Porter v Rohrer, 95 Oh St 90.

DOES THE ORDER OF THE COURT UNDER REVIEW REQUIRE A MOTION FOR A NEW TRIAL IN THE COURT BELOW BEFORE THIS COURT CAN PASS UPON THE ERRORS COMPLAINED OF?

This is an interesting question and is presented by counsel at considerable length.

No motion for a new trial is filed and if that be a prerequisite to appeal to this court, then of course the judgment of the court below can not be reviewed here and must stand as a finality. The position taken by the appellees is that the questions presented require a determination based upon evidence introduced below as to the nature of the services rendered and whether beneficial to the trust fund, and their value, etc., which must first be determined before the law can be applied. Then it is urged that under the authorities cited there is nothing properly before this Court for determination, and that the judgment below should therefore be affirmed. We shall not comment at length upon cases cited, but will merely enumerate them. Chapman v Manix, 17 Abs., 16; Ditmer v Stanley, 20 Abs., 590; Randall v Turner, 17 Oh St 262; Spangler v Brown, 26 Oh St 389; Meacham v Meacham, 11 Abs., 147; Work v Boss, 6 Bul., 271; White v Clawson, 2 Oh Abs., 364.

We would say generally that these authorities tend to support the position asserted by counsel, unless the case falls within recognized exceptions. While there are many cases pro and con upon this question, we find probably the most logical discussion in Ide v Churchill, 14 Oh St 372, at pp. 377 and 378. We will not take the time to discuss to what extent the statutes there under discussion have been later modified by the Legislature, as it appears to us the general principles under discussion still are pertinent to our present statutes. In substance, Ranney, J., in announcing the opinion of the court, says that a long series of decisions has settled the principle upon which a reviewing court will proceed in such cases, (having reference to a verdict of a jury or a decision of the court where a jury is waived). The Judge states that it has been made clear by previous adjudication how and how only the party can entitle himself to a review, that he must secure the right by conforming to the statute and must have exhausted his remedy in the court below where the evidence is heard and this is never done until the court has refused him a new trial upon a motion assigning that the finding is not supported by sufficient evidence. Until this is done the reviewing court is bound to presume that he could have had justice in the court below if he had seen fit to ask for it, and that it is the decision upon the motion for a new trial to which alone the statute gives him a right to except, and that it is immaterial whether the facts are

found by a jury or the court or whether the relief sought is legal or equitable. The same uniform course must be pursued, and that until the party has invoked judicial action upon his motion to set aside the finding he has laid no foundation for an exception and has no authority of law for bringing evidence upon the record. A motion to set aside the finding and for a new trial and the decision of the court overruling that motion and an exception taken to that decision are indispensable prerequisites to the signing of a bill of exceptions, and unless they appear by the record to have been complied with the appellate court has no power to reinvestigate the facts upon the evidence or to reverse the judgment. The bill of exceptions must bring before the reviewing court all the evidence on which the ruling was founded. See also **Spangler v Brown, 26 Oh St 383**, at page 392.

In the case of **Chapman v Manix, 17 Abs., 16**, the opinion of this court was delivered by Judge Hornbeck, and it was there held that it is essential that a motion for a new trial be filed and acted upon within the statutory time and exceptions to the overruling thereof noted in the case in which the reviewing court must make a determination based upon the evidence and the weight thereof, and a motion to dismiss a petition in error for the reason that there was no motion for new trial in the trial court was sustained. However, Judge Hornbeck states, "We are not committed to the general proposition that it is always necessary to file a motion for a new trial to review the action of the trial court." There are numerous cases in which courts have held that no motion for a new trial is necessary in order to review the action of the court below where it is not necessary to weigh the evidence as for instance, where the decision of the court is based upon an agreed statement of facts.

In **Lockwood v Krum, 34 Oh St page 1**, it is held that,

"Where a court upon the trial of questions of fact, states its conclusions of fact separately from its conclusions of law, it is not necessary to the right of a party to have the decision reviewed on questions of law arising upon the facts found, that he should have made a motion for a new trial."

In the case of **McHenry v Carson, 41 Oh St 212**, the matter is discussed on page 224. See also **Earp v Ry. Company, 12 Oh St 621; Brown v Mott Bros., 22 Oh St 149** at page 159.

In the case of **Hance v Chappel, 20 O.C.C., 214**, it is held:

"When the cause is submitted to the Court of Common Pleas upon an agreed statement of facts requiring no action of the court, but to declare the law upon the agreed statement of facts, a motion for a new trial in that court is not necessary to authorize a review of the judgment on error in the appellate court."

The court states in substance on page 219 that the finding of the court to review which a motion for a new trial is necessary is a finding of facts from the evidence. It does not embrace the conclusions of law arising from the facts. Citing cases already commented upon.

Sec 11564, GC, providing for the filing of bills of exceptions recognizes the fact that there are cases in which a motion for a new trial is not required. Counsel for appellant contends that the matter on appeal in this court is not one in which a motion for a new trial is a prerequisite to the entertaining of an appeal, and quotes §11575, GC, defining what is a new trial, and contends that there was no trial in the court below and no issue of fact and no verdict of a jury and no report of a master, and no decision by the court, asserting that a hearing on a motion or application is not a trial, citing **Ohio Jurisprudence, Vol. 39, p. 575, in Trustees v McClannahan, 53 Oh St 403, p. 411; Minnear v Holloway, 56 Oh St 148, 154.**

In the case of **Weaver v R. R. Co., 55 Oh St 491**, there is an interesting discussion by Judge Bradbury as to the requirements of a motion for a new trial before error can be prosecuted. He states on page 494 in substance; statutes of the state do not expressly prescribe the conditions under which a motion for a new trial is or is not necessary to bring a particular question on the record. See **2 Ohio Jur., §227, et seq.**

The first four assignments of error in this Court involve the question of the weight of the evidence.

If there was a trial of the issues in the court below and the appellant desires to review the finding of the court on the weight of the evidence, then under the authorities cited it would be necessary for the appellant, before invoking the jurisdiction of this court, to file a motion for a new trial in the court below, unless this

court is not required to review the evidence.

It is true that the court states that the application was submitted upon the statement of counsel, affidavits, evidence and the record; yet the bill of exceptions filed does not disclose that there was any evidence as commonly understood in adversary proceedings, but merely an ex parte statement by counsel.

But we are of the opinion that the whole matter is foreclosed by the fact that the bill of exceptions, as will appear more at length later herein, discloses that the decision of the court rested upon an agreed statement of facts, and as a consequence no motion for a new trial is required to permit the examination of the finding of the court, or any error of law complained of. See authorities above cited. See Bill of Exceptions, pages 30-31.

We are of the opinion that we may consider the error complained of, not upon the weight of the evidence, but on the sole question whether or not on the facts recited in the entry and the agreed matters disclosed by the bill of exceptions the court had authority to make the allowance of attorneys' fees as a matter of law. If we determine that the fees may be allowed we can not consider the amount but will adopt the figure found by the court below.

## IMPORTANCE OF PRELIMINARY QUESTIONS

It will not escape the attention of counsel that these preliminary questions involve three very important propositions, any one of which, if decided differently by a higher court, would deprive this court of jurisdiction to review the question below and allow the decision of the court below to stand. See Parker v Ingle, 24 Abs 518.

## THE MAIN ISSUE

Having determined that this court has jurisdiction to review the order of the court below, it is our purpose to present the issues as briefly as possible. We feel this may be more effectively accomplished by extracting from the pleadings the pertinent matters which may illuminate the question.

On October 20, 1931, Gilbert Bettman, then Attorney General for the State of Ohio, filed a petition on behalf of Charles T Warner, Superintendent of Insurance, against the Northern Insurance Company of Moscow. We will designate this defendant hereafter as the Insurance Company. It is alleged that the Insurance Company is a corporation organized under the laws of Russia with authority to conduct fire insurance business in the states of Ohio and New York, the latter being its domiciliary state in the United States.

In 1911 the company was licensed by the Insurance Superintendent of Ohio to transact business in this state and made a deposit of $100,000.00 in securities with the Superintendent in order to secure its policyholders residing in the United States and it continued to be so licensed in Ohio until the year 1926, that the total now on deposit with the Treasurer of the State is $123,000.00. It is alleged that the Insurance Company has ceased to do business in Ohio and is insolvent and that the Superintendent of Insurance of New York has been liquidating the property of the company in that state and has on hand a surplus remaining from the liquidation which he has been directed to release, by the New York courts, and that the surviving directors of the company have made application to the Attorney General to bring this action.

Plaintiff prays that the company and all persons claiming any right in said deposit be required to plead or be barred; that the deposit be reduced to money, and an order be made by the court for distribution or disposition.

The court ordered plaintiff to cause publication to be made of the prayer of the petition requiring all persons to set up their claims by October, 1932.

In October, 1932, an answer and cross-petition of the Insurance Company was filed admitting the allegations of the petition and by way of cross-petition alleging that it is subject to and governed by the general law of Russia relating to stock companies and by the provision of its charter; that it holds a charter ratified by the Czar of Russia and his ministers, which provides that the directors of the company with the approval of the stockholders may elect an officer of the company known as Director Rasporiadital; that the directors of the company are authorized to vest powers in said Director and that on the 16th day of February, 1917, the Board of Directors elected Nicolas Andre as such Director of the company for the term of five years; that in 1918 the Board of Directors executed a power of attorney to said Andre as such Director vesting in him certain powers whereby he was exclusively authorized to conduct all litigation of the com-

pany and to receive all the moneys payable to it by the order of any court.

It is further alleged that in November, 1918, certain persons unlawfully and forcibly took possession of the offices of the defendant in Moscow and by force converted to their own use the assets of the defendant there situate, whereby it was made impossible for the defendant to continue business in Russia or elsewhere, and that by reason of such unlawful seizure the meeting of the stockholders and directors have been since prevented.

That under the disposition of the law of Russia known as the principle of "Force Majeure" the corporate existence of the defendant still continues and the power o₊ Andre, the Director, still exists:

That under the laws of Russia said Andre as Director is exclusively authorized to represent the company in this action and to receive any money which may be adjudged due it:

That it is entitled through Andre to receive the proceeds of the deposit referred to over amounts found due to all persons claiming any right to participate therein. Defendant prays that the proceeds of the deposit referred to be ordered paid to Nicolas Andre on behalf of the defendant.

This answer and cross-petition of the company was under date of January 17, 1935, withdrawn. While on that account it is no longer in the record, we cite its allegations for informative purposes.

### ANSWER AND CROSS-PETITION OF BANK OF MANHATTAN

On October 3, 1932, an answer and cross-petition was filed by the Bank of Manhattan Trust Company alleging that the company made a general assignment of all its property without preference to the Bank of Manhattan Trust Company for the benefit of creditors; that by said assignment the company transferred to the Bank of Manhattan all its property wherever situated including the property referred to in the petition, in trust to pay its debts. The cross-petition prays that the property described in the petition be adjudged to it as assignee and that an order be made for the protection of the Superintendent of Insurance of Ohio.

### ANSWER OF THE NORTHERN INSURANCE COMPANY OF MOSCOW.

On the same date an answer of the Northern Insurance Company of Moscow was filed, admitting the averments of the petition and of the answer and cross-petition of the Bank of Manhattan and joins in the prayer of said pleadings.

On October 22, 1932, an answer of the Northern Insurance Company of Moscow to the cross-petition of the Bank of Manhattan was filed, admitting certain allegations of said cross-petition as to the appointment of the Bank as its assignee and its action under said appointment, but denying other allegations and praying that the cross-petition of the Bank may be dismissed. This cross-petition was sworn to by Clarence D. Laylin, as attorney for the company and for Nicolas Andre, its Director.

### ANSWER AND CROSS-PETITION OF THE SUPERINTENDENT OF INSURANCE OF THE STATE OF NEW YORK.

On February 2, 1933, an answer and cross-petition of the Superintendent of Insurance of the State of New York, liquidator of the Northern Insurance Company was filed, praying that property on deposit in Ohio be distributed as the court may judge to be proper under an appropriate order made for his protection and for the protection of the Superintendent of Insurance of Ohio.

On motion of the Attorney General, James N. Linton, in 1934, was appointed Special Master Commissioner to ascertain the facts connected with the unpaid liabilities of the company on contracts as it affects Ohio policyholders.

On August 15, 1934, the United States of America moved for leave to be made party defendant.

On December 27, 1934, B. W. Gearheart filed a motion representing that he is the attorney for the defendant company, the Bank of Manhattan and the Superintendent of Insurance of New York and as such has rendered services of value in this proceeding to all persons entitled to participate in the fund in making said fund available for distribution and asked that he be made party with leave to file application setting up the services and the value thereof. This is the first appearance of the question of attorneys' fees, which is now the major question in this case.

An entry was made approving the report of Special Master James N. Linton, reporting there are no unpaid claims or liabilities of the company, and that the claims of all policyholders resident in the United

States have been paid, and allowing the compensation of $1800.00 as Master Commissioner and certain expenses, which were paid out of the assets of the company.

## INTERVENING PETITION OF B. W. GEARHEART

On January 10, 1935, the intervening petition of B. W. Gearheart was filed under leave, the substance of which will be noted hereafter at a more appropriate place.

On January 17, 1935, an order was journalized to the effect that the claim of Nicolas Andre to the control of the fund involved having been settled, it is agreed that the answer and cross-petition of the Northern Insurance Company filed October, 1932, setting up such claim, and the answer of the Northern Insurance Company to the cross-petition be withdrawn and the prayers thereof disregarded.

On February 15, 1935, the United States filed a petition for removal of the cause from the Court of Common Pleas to the District Court of the United States, restating certain matters already recited and further stating that the United States ascerts claims to the entire fund and praying that the suit may be removed from the State Court into the United States Court. Afterwards this petition on application was dismissed and leave granted to the United States to interplead.

The death of B. W. Gearheart, intervening petitioner, was suggested and it was ordered the action be continued in the name of the administrator.

On March 30, 1936, a motion was filed by Charles S. Druggan, Paul R. Gingher and J. Paul McNamara of Columbus, and Robert Sykes and others of New York, representing that they are attorneys for the defendant insurance company, the Bank of Manhattan Trust Company and the Superintendent of the State of New York and as such have rendered services of value in this proceeding and ask that they may be made parties hereto with leave to file application setting up said service and the value thereof and for compensation out of the fund. This is the first pleading or application in which these counsel assert an interest in the fund. They were by the order of the court made parties with leave to file their application, in pursuance of which leave they filed an application asking for an order of the court determining the value of the services of said applicants and for an order directing the payment.

## INTERVENING PETITION FILED BY UNITED STATES OF AMERICA

On April 18, 1936, an intervening petition was filed by the United States of America making certain admissions but denying that the Northern Insurance Company of Moscow is or since the year 1918 has been a corporation existing under the laws of Russia as alleged in the petition, and asserting that the United States has a sovereign title, right and interest in and to the funds subject of this action.

It is alleged that in 1918 and 1919 the Russian state, by certain laws, decrees and enactments proclaimed the business of insurance in all of its forms to be a monopoly of the Russian state.

It is alleged that the Northern Insurance Company of Moscow, which prior to 1918, was a corporation organized under the laws of Russia, by said laws of the Russian state was dissolved, terminated and liquidated and that all of its properties and assets wherever situated, including the assets in Ohio, were nationalized and all of its debts, liabilities and obligations to all of its creditors, including the alleged debts, liabilities and obligations to creditors and shareholders asserted in this action were discharged, cancelled, extinguished and annulled.

It is further alleged that on November 16, 1933, by executive agreement contained in the exchange of diplomatic correspondence, the Union of Soviet Socialistic Republics released and assigned to the United States all amounts admitted to be due or that may be found to be due to the Union of Soviet Socialist Republics, including the deposit described in the petition; that since November 16, 1933, the United States Government has been and now is the sole and exclusive owner and entitled to the immediate possession of the deposit subject only to the claims of domestic policyholders.

The United States of America prays that it may be adjudged owner of and entitled to said funds in the state of Ohio and that the treasurer of the state be ordered to pay to it all of said funds with interest.

The entry of September 26, 1936, already adverted to fixing and ordering payments of attorneys' fees, was filed in the Court of Common Pleas in which it is stated that the cause was heard on the application of Gearheart, now deceased, and upon the application of counsel for defendants, Northern Insurance Company of Moscow, Bank of Manhattan Trust Company of New York and the Superintendant of Insurance of New York upon statement of counsel,

affidavits and evidence and the record. The court finds certain facts as to the services rendered by the several counsel as hereinbefore set out, and that they have received no payment on account thereof and ordering that there be allowed the expenses and the fee of $20,000.00, etc.

Charles S. Druggan files an affidavit stating that same is submitted to supplement transcript of the statements of counsel in open court in support of the application for the allowance to counsel for compensation and the expenses. In this affidavit he recites the fact that he is associated with certain other counsel and states the amount of expenses. Robert J. Sykes files an affidavit setting up his activities in reference to the litigation, and that in behalf of the company and the assignee and in association with Ohio counsel named, he performed certain services and incurred certain expenses.

The foregoing is the substance of the pleadings filed in the Court of Common Pleas and the order of the court in reference thereto as disclosed by the transcript of docket and journal entries.

## BILL OF EXCEPTIONS

As heretofore stated a bill of exceptions was filed in this Court on September 17, 1937, which purported to set forth the matters heard before Judge Reynolds in the January Term, 1936, presented by the applicant to maintain the issues in reference to their fees. While these statements are not submitted in the form of testimony we find on pages 30 and 31 of the record a question propounded by Mr. Sykes:

"MR. SYKES: Is it agreeable to Your Honor that the statements that have been made by counsel here today, in support of the applicant's position, in so far as they treat with the facts and occurrences that transpired in the past, be admitted as facts and in lieu of affidavits?

THE COURT: I understand Mr. O'Donnell's position (counsel for the Government), it is a question of law rather than a question of fact. He is not disputing the facts here.

MR. O'DONNELL: That is true. I do not doubt at all but what a lot of work has been done."

And further:

"If these gentlemen are entitled to fees we are not quibbling whether they earned five thousand or ten thousand dollars, we will let that go for the court to decide, in view of your former familiarity with questions of this kind. The question is are you entitled to any fees at all?

MR. McNAMARA: That is a question of law.

MR. O'DONNELL: Yes.

MR. DRUGGAN: I understand, Mr. O'Donnell, that all forms of fact in the pleading made by Mr. Gearheart are admitted, you are not questioning those or do not want to traverse them."

And Mr. Druggan on page 32, addressing Mr. O'Donnell,

"Whatever it is, what I am getting at is this, are you disputing the facts. You think it is a matter of law, so far as this record is concerned and whatever the court may do I want in this record now that these statements of fact in Mr. Gearheart's petition and as stated orally here today are accepted as facts.

MR. O'DONNELL: Yes.

MR. DRUGGAN: Now, that is agreeable to you.

MR. O'DONNELL: Yes.

MR. DRUGGAN: Now, you are going to make a contention as to a matter of law?

MR. O'DONNELL: Yes."

These admissions dispense with the necessity of a motion for new trial in the court below, as heretofore pointed out.

Attached to the bill of exceptions are copies of certain documents which the Government claims are the initial source of its title. First, is the letter dated November 16, 1933, to the President of the United States, reciting certain agreements of the Government of the Union of Soviet social-ist Republics.

To this communication the President of the United States replied, under date of November 16th, 1933, reciting the statements made by Maxin Litvinoff, People's Commissar for Foreign Affairs, Union of Soviet Socialist Republics, stating:

"I am glad to have these undertakings by your Government and I shall be pleased to notify your Government in each case of any amount realized by the Government of the United States from the release and assignment to it of the amounts admitted to be due, or that may be found to be due, the Government of the Union of Soviet Socialist Republics, and of the amount that may be found to be due on the claim of the Russian Volunteer Fleet."

The application for attorneys' fees is based upon the allegation of the intervening petition of B. W. Gearheart who has since died, and was succeeded or aided by counsel then claiming the allowance of fees. Re-examining that petition briefly it recites that he was employed by the Company and the Bank of Manhattan Trust Company of New York to take such steps and cause such proceedings to be instituted as might be necessary to secure a finding and judgment in the courts of Ohio; that the claims of policyholders resident in the United States against the defendant, The Northern Insurance Company of Moscow had been satisfied and proceedings taken for a proper liquidation and disposition of the securities mentioned in the petition; that he was employed by the Superintendent of Insurance of New York; that he arranged with counsel in New York to secure certain information and held numerous conferences, and represents that he and counsel associated with him went over many facts, that the defendants herein agreed that said funds so realized from the proceedings should be charged with the Intervenor's fees and expenses, and the Superintendent of Insurance and the Attorney General of Ohio understood that such would be the case and by reason thereof the funds were not subjected to the expense of other special counsel; that he had numerous conferences with various authorities having interest in the fund and attended the hearings before the Master Commissioner and conferred with him; that a large amount of time was spent by him in examining Russian law; that he has been advised by counsel representing the United States that on its behalf they will object to any allowance to him for fees and expenses; that such services were performed before the recognition of the Soviet Government by the United States; that he was employed when the Insurance Company of Moscow had capacity to employ counsel and that the claim of the United States, if valid, which the intervenor denies, arises by reason of its privity with and as successor in title to the Northern Insurance Company of Moscow. Wherefore defendant prays that the value of its services may be determined.

The attorneys now appearing before the court adopt this cross-petition as the basis of their claim.

Elaborate briefs have been filed, and argument of counsel submitted to the court as statements of fact appear in the Bill of Exceptions. These we have studied carefully in detail. They support the claims of the cross-petitioners as to the essential facts.

## CLAIMS OF PARTIES.

On page 15 of the bill of exceptions it is stated by the Court that when the suit was instituted Mr. Gearheart was employed by the Insurance Company which was then or had been the owner of the money, and the Court inquires whether or not the question is raised about his being entitled to compensation, to which Mr. O'Donnell replied that they raised the question as to whether it was to be paid out of the fund, that the cause of action was begun by the Attorney General and that Gearheart was employed by the company, and the Court makes inquiry as to where Mr. Gearheart is going to be paid if not out of this fund, to which the reply was made (p. 16) that if his client succeeds in the litigation, his client will pay him, but if the Government succeeds, it should not pay Gearheart, and Mr. O'Donnell claims that the money does not belong to any one until it is finally adjudicated to whom it does belong; that there is no Northern Insurance Company of Moscow and was not when Mr. Gearheart was employed. Mr. Druggan states that there have been adjudications in this country, that the decree of the Soviet Government did not operate extra territorially; that they might destroy us in Russia, but that can not affect assets here.

Counsel for the Government in answer to a query by the court states that the United States claims this fund by reason of the assignment of the Soviet Republic of all its assets to the Government, and the Court states that if the assignment is valid it would still be subject to any lien before the assignment is made to which, it is asserted that the claims for fees are not a lien. Government counsel states, "we think it is too soon to pass upon the question as to who should pay counsel, that if the assets come to the United States it is maintained that attorneys resisting the claim of the United States have no right to participate. The Court asked (p. 18) whether it was claimed that the United States had any interest in the fund contrary to the recognition of the Soviet Government, to which counsel replied, "No, but we claim the Soviet Government had and the Soviet Government——", to which the Court replied, "The Soviet Government do not have very much power in this Court or in this state."

Mr. Sykes for applicants states that as

be found the Government position they would like to come in and get the benefit of all the work that has been done and if they are ultimately successful, take up the fund free from charges; that whether they are successful in the litigation is unimportant, they are entitled to fees. It is stated by Mr. Druggan on page 22 that the defendants agreed that when the fund was released it should be charged with intervenor's fees, and that the Attorney General understood that would be the case, and that by reason thereof no other expense by special counsel was incurred. Counsel made further statements of like purport. The court states on page 27 that the time Mr. Gearheart was employed he was employed by the North American Company of Moscow, and, it was added by Mr. Sykes, the Bank, who was the assignee. The Court states that whatever steps the Russian Government had taken to terminate the existence of The Northern Insurance Company have not been terminated so far as this Court is concerned, and that our courts would not recognize any confiscatory action on the part of the Government no matter how effective decrees may be or may have been in Russia, and that their decrees would not be recognized because we did not then recognize the Government, and the Court concludes his statement (p. 28) that he did not see how the court could conclude otherwise than to recognize this money at the time of this transaction as belonging to the Northern Insurance Company of Moscow, and when Mr. Gearheart was employed to conserve that fund his compensation would be a lien against that fund and that the court has full authority to allow compensation for the work of attorneys in conserving that fund, even though it was not a case of creating the fund. Counsel for the Government (p. 31) states that if the gentlemen are entitled to fees the Government is not quibbling about the amount.

### THE VIEW TAKEN BY THIS COURT

In the judgment of this court the record clearly shows that the initial action begun by counsel was under their engagement as attorneys for the Insurance Company and the Bank as assignee, and that the Government now intervenes and claims that due to certain actions the Russian Soviet Government and certain treaties made with the United States, neither the Company nor the Bank has any interest in the fund, but that it belongs in its entirety to the Government of the United States.

It further appears that the court below has never yet passed upon the question presented by the various pleadings as to who is the owner of the fund or is ultimately entitled thereto, except so far as it may inferentially be determined from the court's remarks as disclosed by the bill of exceptions that he believed the fund belonged to the insurance Company and the Bank at the time of the original appointment of counsel. This finding of the Court was never embodied in an entry and does not appear in the entry allowing attorneys' fees. After giving the matter our serious consideration we have arrived at the conclusion that an allowance of attorneys' fees to be paid out of a fund, the ownership of which has not been finally determined by the court, is premature; that it must first be determined to whom the fund belongs, especially at the time of the employment of counsel, and since that date. If it legally belonged to the Soviet Government or by virtue of assignment is now the property of the United States Government, then manifestly the services performed by counsel were not performed for the owner of the fund but for a litigant claiming the fund.

It is asserted that the fund was conserved and freed from the liens and claims, if any, of policyholders. In reality the fund was not conserved through the action of counsel but all they were endeavoring to do was to have the fund awarded to their client. Whatever was done to free the fund from claims of policyholders or other claimants was performed through the services of Mr. Linton, Master Commissioner, for which proper fees were allowed and paid.

We then find counsel in this position: they concededly represent and have for a long period of years represented a claimant to the fund whose ownership is disputed. They have taken the chance of working for a possibly defeated client. They would not be in much different position if, having instituted a claim for a fund in trust, but the ownership of which was in litigation, they would represent that they had worked diligently to establish that claim for their client and therefore should be paid as if the fund had been released through their services and was before the court for distribution to their client.

### THE EFFECT OF THE SO-CALLED TREATY BETWEEN THE SOVIET GOVERNMENT AND THE UNITED STATES.

The effectiveness of this treaty to transfer whatever ownership in the fund was possessed by the Soviet Government to the Government of the United States is denied.

In the case of the United States v Belmont, June 1st, 1937, Supreme Court Reports, 301, 324, it was held that where Soviet Government of Russia nationalizes a Russian corporation having a deposit with a New York bank, and appropriated its assets and as a part of an international compact assigned to the United States Government all claims against the American Nationals, an alleged policy of the state of New York could not prevail against such international compact so as to prevent recovery by the United States Government of the amount of the deposits, and that the courts must take judicial notice that coincident with the assignment by the Russian Soviet Government to the United States of claims against American Nationals the President recognized the Soviet Government, and that the recognition of the Soviet Government by the President and the establishment of diplomatic relations validated, so far as this country is concerned, all acts of the Soviet Government from the commencement of its existence respecting the nationalization of a Russian corporation having a deposit with a New York bank; that the policy of the United States that private property shall not be taken without just compensation has no extra territorial operation and what another country has done in the way of taking over property of its nationals is not a matter for judicial consideration so long as no rights of American Nationals, other than as mere custodians of the funds so appropriated are involved.

We are also referred to the case of United States of America, Appellant, v Directors of the Manhattan Company, decided by the Court of Appeals of New York on January 11, 1938. holding in substance that the Bank of Manhattan has no interest in the fund except as a depository and that the Superintendent of Insurance of New York has no interest therein. These two cases have no bearing upon the question now before us but will no doubt be pertinent when the court below finally determines the ownership of the fund. This matter is not now before this court and we express no opinion upon it.

We are of the opinon that the order of the court below allowing attorneys' fees payable out of the fund was erroneous for the reasons herein stated, and the same is reversed.

Judgment accordingly.

BARNES, PJ, and HORNBECK, J, concur.